IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH OLSAVSKY, individually and on behalf )
of all others similarly situated, )
        Plaintiff, )
 )
vs )   Civil Action No. 18-1278
 )   Magistrate Judge Dodge
EXPRESS SCRIPTS, INC., )
        Defendant. )

MEMORANDUM OPINION AND ORDER ON DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiff Joseph Olsavsky, individually and on behalf of all others similarly situated, commenced this action on September 25, 2018 in which he asserted claims for breach of contract and unjust enrichment against Defendant, Express Scripts, Inc. ("ESI"). Plaintiff alleges that ESI charges exorbitant and arbitrary fees when law firms, acting as authorized agents on behalf of injured parties, submit requests to ESI for pharmacy records.

After ESI filed a motion to dismiss the original Complaint, Plaintiff filed a First Amended Complaint (ECF No. 15) ("Amended Complaint"). ESI now moves to dismiss the Amended Complaint (ECF No. 24). ESI's motion has been fully briefed by the parties and is ripe for disposition.[1]

Facts

According to the Amended Complaint, ESI offers pharmacy benefit management services through a network of retail pharmacies, and also provides home-delivery pharmacy services to patients. (Am. Compl. ¶¶ 22, 23.) Plaintiff alleges that on April 20, 2018, he requested his pharmacy records from ESI through his authorized law firm agent. (Am. Compl. ¶ 22.) Plaintiff

---

[1] In its motion, ESI requested oral argument, but the Court concludes that the motion to dismiss can be decided on the briefs.

initiated this process by signing an ESI document titled "Authorization to Use and Disclose Health Information" requesting "Prescription Claims Information/Prescription History (PBM records). (Am. Compl. ¶42.)[2] Plaintiff alleges that, despite ESI's claim that it provides records at no charge if directly requested by the customer, "nowhere on its invoices or forms, or on its customer prescription cards, does it advise customers of this option." (*Id.* ¶ 47.) The form that Plaintiff signed includes the following language:

> **Prescription Claims Information is readily available for the previous ten years.** Patients wanting prescription claim information sent to the address on file should call the number on the back of the prescription identification card.

(*Id.* Ex. 1 at 2) (emphasis in original.) Whatever ESI's intent or actual practice may be, this section of the form does not specifically state that customers may obtain their records without charge by calling the number on their prescription card. Directly underneath this language, the form states: "Please return completed form along with a check or money order for the non-refundable processing fee of $90.00" to ESI. (Am. Compl. ¶ 44 & Ex. 1.)

Plaintiff paid the processing fee of $90.00 and received six pages of medical records. (Am. Compl. ¶¶ 22-23.) The six pages of records received by Plaintiff through his agent reflect a mix of both retail pharmacy prescriptions and prescriptions directly filled by ESI. (Am. Compl. ¶ 24.) Plaintiff asserts that the cost of his medical records was, or will be, deducted from a settlement of his claims in a products liability lawsuit, which will come directly out of his net recovery. (Am. Compl. ¶¶ 24-25.)[3]

---

[2] A copy of this document is attached to the Amended Complaint as Exhibit 1.

[3] As ESI observes, this allegation is inconsistent with other statements in the Amended Complaint to the effect that Plaintiff paid the fee himself (Am. Compl. ¶¶ 6, 22) or that his lawyers paid the amount by check (id. ¶¶ 30, 44 & Ex. 1). As such, according to ESI, Plaintiff may not have suffered an injury in fact or have standing to bring this lawsuit (ECF No. 25 at 4 n.2). This argument is made in a footnote and without citation to authority. Moreover, because portions of the Amended Complaint allege that Plaintiff actually incurred the cost, the Court will

2

Although Plaintiff, through his agent, paid the fee to ESI, he contends that the payment was not voluntary because ESI did not offer to waive or discount the fee if certain conditions were met. (Am. Compl. ¶ 30.). Further, Plaintiff notes that, among other things, the $90.00 charge was in excess of the cost of the handling, cost of copies and actual shipping. (Am. Compl. ¶ 22.)

The Amended Complaint asserts that many third-party requests result in only two or three pages of records, and lawyers making third-party requests have no option but to pay the fee if they wish to further prosecute or investigate their clients' legal claims. (Am. Compl. ¶ 29.) According to the Amended Complaint, ESI charged all requestors the same non-refundable fee, regardless of various state law requirements related to fees that companies may charge for record requests. (Am. Compl. ¶ 28.) Other health providers in Pennsylvania, as well as national pharmacy chains that operate in Pennsylvania, routinely charge a fee based on applicable state laws or a reasonable fee of $1.00 per page or less. (Am. Compl. ¶ 37.)

On or about April 1, 2018, ESI increased its third-party processing fee from $75.00 to $90.00, regardless of how many pages of records are provided. (Am. Compl. ¶ 29.) In raising the non-refundable fee to $90.00, ESI did not provide any explanation for how or why the cost increased, or whether it was reasonable. (*Id.*)

Until recently, according to Plaintiff, ESI claimed that its fee is for "processing" and not for shipping. (Am. Compl. ¶ 26.) At some point in recent months, however, ESI changed the language in its authorization and removed the word "processing." (*Id.*) Plaintiff asserts that this is further evidence that ESI is aware of the unreasonable nature of its charges. (*Id.*) The Amended Complaint claims that no accounting is done by ESI to keep track of overhead costs

view these allegations in the light most favorable to Plaintiff for purposes of resolving ESI's Motion to Dismiss.

3

for the processing of such records. (Am. Compl. ¶ 27.) [4]

According to Plaintiff, the execution and submission of the authorization form and his non-refundable payment of the $90.00 fee for "processing" created a contract between Plaintiff and ESI and is a "classic contract of adhesion." (*Id.* ¶¶ 42, 46, 49.) Plaintiff represents that his sole contract claim is that ESI breached its express and implied contracts with Plaintiff and members of the class. (Am. Compl. ¶¶ 26-27.) Plaintiff also claims that ESI was unjustly enriched by charging exorbitant and unreasonable fees that bear no relationship to the cost of the requested records. (Am. Compl. ¶¶ 32-34.)

Plaintiff proposes to represent a class defined as follows:

> All individual citizens of the State [sic] of Pennsylvania who were charged excessive and unreasonable fees of either $75.00 or $90.00 for a copy of their health information and/or records from Express Scripts, following a request by a third-party law firm or records company on their behalf, from Jan. 1, 2008 to present.

(Am. Compl. ¶ 11.)[5] Plaintiff estimates that the class includes more than one thousand third-party requests from 2008 to the present. (Am. Compl. ¶ 12.)

In its Motion to Dismiss, ESI contends that neither the breach of contract claim nor the unjust enrichment claim state a claim upon which relief may be granted. ESI's arguments will be addressed below.

Standard of Review

The United States Supreme Court has held that a complaint must include factual

---

[4] ESI notes (ECF No. 25 at 7 n.6) that Plaintiff supports this allegation by citing to a deposition designated as "confidential" and filed under seal in another case (Am. Compl. ¶¶ 27-28 & nn.3-4). The Court will limit its analysis to the allegations of the Amended Complaint without reference to the citations outside the record.

[5] ESI argues that Plaintiff's proposed class period is "plainly inappropriate" because the statute of limitations for breach of contract and unjust enrichment claims is four years. (ECF No. 25 at 5 n.3) (citing 42 Pa. C.S. § 5525(a)(8).) Issues related to the statute of limitations are not before the Court at this time, however.

4

allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id.* at 679. The United States Court of Appeals for the Third Circuit has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Plaintiff's Breach of Contract Claim

In Count II of the Amended Complaint, Plaintiff alleges that ESI breached its contractual duties by charging an excessive, unreasonable and non-negotiable fee of $90.00 for "processing" his records when the amount charged had no relation to the costs incurred by ESI to supply the requested records. ESI moves to dismiss this claim, including on the ground that Plaintiff fails to allege that ESI breached any contractual duty.

5

To maintain a cause of action for breach of contract under Pennsylvania law, a plaintiff must allege: "'(i) the existence of an agreement, including its essential terms; (ii) a breach of a duty imposed by that agreement; and (iii) damages resulting from the breach.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

ESI refers to an "alleged contract" throughout its brief but does not seek dismissal with respect to Plaintiff's contention that the parties formed an agreement. Rather, it contends that because ESI supplied the pharmacy records that were requested and fulfilled its contractual duties, Plaintiff's claim that the $90.00 fee he paid to obtain his records was "unreasonable," or was unrelated to the actual cost of producing the records is irrelevant.[6]

However, Plaintiff contends that ESI breached a contract term that its costs were for "processing" when, in fact, the $90.00 fee was not related to processing costs but rather, was arbitrarily set to increase profits for ESI. On this issue, Plaintiff cites to *Harrod v. Express Scripts, Inc.*, No. 8:17-cv-1607-T-30TGW, ECF No. 33 (M.D. Fla. Nov. 27, 2017) in support of his position. In *Harrod*, the claims that were asserted arose out of the same language at issue in this case ("non-refundable processing fee of $75.00"). In response to ESI's motion to dismiss in that case, the *Harrod* Court discussed the breach of contract claim as follows:

> The Court cannot dismiss this count because, assuming there is a contract as Plaintiff alleges, the term of the contract may not be clear. Each party may have entered into the contract with a different interpretation of the word "processing." Plaintiff believed the fee was only for "processing, including the

---

[6] ESI argues in a footnote that the breach of contract claim is barred by the "voluntary payment doctrine," which prohibits recovery of payments made pursuant to a mistake of law. (ECF No. 25 at 7 n.5.) *See Acme Mkts, Inc. v. Valley View Shopping Ctr., Inc.*, 493 A.2d 736, 738 (Pa. Super. 1985) (tenant who made payments to maintain a parking lot but who had no obligation to do so because the lease only required payments during an initial term could not recover based on this doctrine). However, ESI has not explained how the doctrine has any bearing on this case since both parties agree that Plaintiff was obligated to pay the fee if he wanted to obtain the records.

cost of paper, postage, time spent retrieving the records, and other related items." Plaintiff alleges that the fee she paid is unreasonable because, in part, [ESI] did not produce any medical records. [ESI] argues that it only agreed to "process" the request for medical records; it did not represent that the processing fee was based on the actual or average cost of producing records or that there would only be a fee assessed if [ESI] found records. [ESI] appears to define the word "process" in this context as searching for records.

> "When a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties." *Pearson v. Caterpillar Fin. Servs. Corp.*, 60 So.3d 1168, 1171 (Fla. Dist. Ct. App. 2011). (internal citations omitted). Because the terms of the contract are at issue, the Court cannot determine if [ESI] breached a term of the agreement.

*Id.* at 14.

ESI cites to *Gearhart v. Express Scripts, Inc.*, No. 0:18-cv-00002, ECF No. 37 at 3 (E.D. Ky. Feb. 22, 2019), a decision which also addressed a motion to dismiss filed by ESI. In that case, the court's discussion of the plaintiff's breach of contract claim included the following analysis:

> Here, Plaintiff's claim for breach of contract fails [because] ... the Third Amended Complaint contains no factual allegations that plausibly suggest the existence of a contract. Although, [sic] Plaintiff states that a contract exists between [ESI] and whomever requests their records, he does not identify any alleged contract, describe the terms of any alleged contract, or attach any alleged contract to his complaint. Plaintiff's conclusory allegations do not validly state a claim. "Conclusory assertions, e.g., that [the] defendants engaged in 'outrageous' and 'unlawful' behavior ... are insufficient to state a claim that is plausible on its face." *Ogle v. Columbia Gas Transmission, LLC,* 513 Fed. Appx. 520, 522-523 (6th Cir. 2013).
>
> Moreover, Plaintiff fails to point to any express provision of the contract that [ESI] purportedly breached. Nor does Plaintiff indicate how [ESI] breached any such provision. Indeed, the only obligation under the purported contract Plaintiff alleges is that [ESI] "obligates itself to provide" records "in exchange for a flat fee of $75.00 or $90.00 for processing." Plaintiff has not alleged that [ESI] breached this obligation. Indeed, Plaintiff concedes that he received "[t]he five pages of medical records." Which begs the question, where is the breach?

*Id.* at 3 (internal citations omitted).[7]

In this case, Plaintiff has identified a contract, namely the authorization form that he submitted to ESI for release of his records to his attorney and his promise to pay the fee in exchange for ESI's processing of his request. By contrast, the *Gearhart* court's opinion notes that the plaintiff did not identify the contract on which his claim relied. (*Id.* at 1.) Moreover, while the court also rejected the breach of contract claim because the plaintiff in that case received the requested record, the court did not discuss the potential ambiguity of the term "processing." Thus, the *Gearhart* case can be distinguished from the instant matter.

Defendant also cites to *Burton v. Express Scripts, Inc.*, 2018 WL 1157058 (E.D. Mo. Mar. 5, 2018) in support of its position. In that case, however, the only issue was whether ESI was a "licensed provider" under a Missouri statute that limited the amount of fees it could charge for health care records, and the court determined that ESI was not a "licensed provider." *Id.* at *5.

Thus, the case most analogous to the present matter is the *Harrod* decision in which the court concluded that because the "processing" term could have different meaning to the parties, it was ambiguous, thereby requiring extrinsic evidence of the intent of the parties.
ESI argues that its authorization did not state that its fee would relate to the actual cost to process the records, and requiring a flat fee of $90.00 to be paid in advance could not have imposed such an obligation on ESI. It contends that courts routinely dismiss claims when, for instance, "shipping and handling," "order handling," and late fees paid by plaintiffs are more than the actual cost to defendants. In turn, Plaintiff has alleged that ESI's fee is grossly disproportionate to processing costs usually incurred in the industry. (Am. Compl. ¶ 37 & n.5)

---

[7] *See* Defendant's Notice of Supplemental Authority in Support of its Motion to Dismiss (ECF No. 36) Ex. A.

8

Although ESI may not have represented that its fee would relate to its actual costs, it does argue in its motion to dismiss that its fee was, in fact, "reasonable" (ECF No. 25 at 10, ECF No. 29 at 1). Indeed, the very cases that ESI cites to support its argument rejecting actual costs as a basis for challenging the fee also acknowledge that fees can be found to be unreasonable when compared to others in the industry. See *Ciser v. Nestle Waters North America, Inc.*, 2013 WL 5774121, at *4 (D.N.J. Oct. 24, 2013), *aff'd mem.*, 596 F. App'x 157 (3d Cir. 2015) (court could not conclude that a $15 late was "grossly disproportionate" when compared to $10 fee charged by others in the industry); *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 623 (7th Cir. 2012) (plaintiff did not allege that defendant's handling, postage and insurance fees were grossly disproportionate to those charged by other brokerage firms).

Thus, because the term "processing" in the parties' contract creates an ambiguity, this issue cannot be resolved by a motion to dismiss.

Plaintiff also contends in his breach of contract claim that the fee assessed by ESI is unconscionable and represents a "contract of adhesion." (Am. Compl. ¶¶ 45, 49.) ESI, on the other hand, claims that the Plaintiff's claim of unconscionability fails.[8]

"The determination of whether a contract or clause is unconscionable is a question of law for the court." *Metalized Ceramics for Elec., Inc. v. National Ammonia Co.*, 663 A.2d 762, 764 (Pa. Super. 1995) (citation omitted). The Court of Appeals for the Third Circuit has summarized Pennsylvania law on this issue:

> Unconscionability is a "defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract."

---

[8] While Plaintiff also pleaded unconscionability in his unjust enrichment claim and ESI appropriately discusses it in that context, the Amended Complaint alleges that an element of the contract, *i.e.*, the fee charged, was unconscionable. Moreover, unconscionability is a contractual remedy. Thus, the Court addresses this issue in connection with Plaintiff's contract claim.

*Germantown Mfg. Co. v. Rawlinson*, 341 Pa. Super. 42, 491 A.2d 138, 145 (1985) (quoting D. DOBBS, HANDBOOK ON THE LAW OF REMEDIES 707 (1973)). The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability. *Bishop v. Washington*, 331 Pa. Super. 387, 480 A.2d 1088, 1094 (1984); *see also Argo Welded Products, Inc. v. J.T. Ryerson Steel & Sons*, 528 F. Supp. 583, 592-93 (E.D. Pa. 1981).

In evaluating claims of unconscionability, courts generally recognize two categories, procedural, or "unfair surprise," unconscionability and substantive unconscionability. *See Ferguson v. Lakeland Mut. Ins. Co.*, 408 Pa. Super. 332, 596 A.2d 883, 885 (1991); *Bishop*, 480 A.2d at 1095; *Germantown*, 491 A.2d at 145-46. Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. See E. ALLAN FARNSWORTH, CONTRACTS § 4.28 (2d ed. 1990). This type of unconscionability involves, for example, "material, risk-shifting" contractual terms which "are not typically expected by the party who is being asked to 'assent' to them" and "often appear[ ] in the boilerplate of a printed form." *Germantown*, 491 A.2d at 145–46. Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. *See id.*, at 145-147; *Denlinger, Inc. v. Dendler*, 415 Pa. Super. 164, 608 A.2d 1061, 1068 (1992). Thus, "[u]nconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Bensalem Township v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1312 (3d Cir. 1994) (quoting *Worldwide Underwriters Ins. Co. v. Brady*, 973 F.2d 192, 196 (3d Cir.1992)).

*Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181-82 (3d Cir. 1999).

Plaintiff alleges that the terms of the contract were unreasonable and favorable to ESI and that he had no meaningful choice regarding his acceptance of the terms imposed by ESI. ESI argues that Plaintiff cannot allege procedural unconscionability because there was not a "lack of meaningful choice" as Plaintiff could have obtained the records without charge by calling ESI at the telephone number listed on his prescription identification card. ESI also suggests that Plaintiff "could have retrieved his prescription records from the individual pharmacies—that is, another meaningful choice." (ECF No. 25 at 16 n.10.) Plaintiff alleges, however, that he had no meaningful alternative to obtain his records. (Am. Compl. ¶¶ 47, 49.) These are questions of

10

fact that are not appropriately addressed at this stage of the lawsuit.

ESI next contends that Plaintiff fails to allege substantive unconscionability because "[i]t is an elementary principle that the [court] will not enter into an inquiry as to the adequacy of the consideration." *Fennimore v. Bank of America, N.A.*, 2015 WL 7075814, at *8 (E.D. Pa. Nov. 12, 2015) (quoting *Thomas v. Thomas Flexible Coupling Co.*, 46 A.2d 212, 216 (Pa. 1946)). The line of cases cited by ESI, however, addresses inadequate consideration, not "contractual terms that are unreasonably or grossly favorable to one side."

Thus, for purposes of a motion to dismiss, Plaintiff has sufficiently pleaded that the processing fee term in the contract at issue was unconscionable.

ESI also asserts that because Pennsylvania law does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing, Plaintiff cannot rely upon any such covenant to contradict the actual terms of the contract.[9] Indeed, a number of courts have held that that Pennsylvania does not recognize an independent cause of action for breach of the duty of good faith and fair dealing when a breach of contract claim is asserted. *See Davis v. Wells Fargo*, 824 F.3d 333, 352 (3d Cir. 2016) (citing cases).

With respect to the scope of such a duty:

> In Pennsylvania, any party to a contract is required to exercise a duty of good faith and fair dealing in performing and enforcing the contract. *See Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000). However, there are limitations to this duty. In particular, the implied duty of good faith and fair dealing "does not impose obligations on parties that contradict those included in the contract," nor can it compel a lender "to surrender rights which it has been given by statute or by the terms of its contract." *Tanenbaum v. Chase Home Fin. LLC*, No. 13-4132, 2014 WL 4063358 at *7 (E.D. Pa. Aug. 18, 2014) (quoting *Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.*, 385 Pa. Super. 30, 560 A.2d 151, 154 (1989)). In other words, "[i]mplied duties cannot trump express provisions in contract." *Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa.

---

[9] Plaintiff has not asserted a separate cause of action for the breach of good faith and fair dealing, but rather, raises this covenant in support of his breach of contract claim. (Am. Compl. ¶ 48.)

11

Super. Ct. 2005) (quoting *John B. Conomos, Inc. v. Sun Co., Inc. (R & M)*, 831
A.2d 696, 706 (Pa. Super. Ct. 2003)).

*Wells Fargo Bank, N.A. v. Chun Chin Yung*, 317 F. Supp. 3d 879, 888 (E.D. Pa. 2018).

ESI's argument that Plaintiff cannot rely on this implied duty is premised upon its claim that the phrase "processing fee of $90.00" is an express, unambiguous provision of the contract. ESI's argument is premised upon its claim that its form advised Plaintiff could have obtained the records for free. However, as previously discussed, the form does not clearly so provide and Plaintiff alleges in the Amended Complaint that ESI did not state anywhere on its authorization that his prescription records could be obtained without charge. Plaintiff also counters that as in *Harrod*, the contract term is ambiguous and that any ambiguities should be construed against the drafting party, particularly in a contract of adhesion. Therefore, this is an issue of fact that cannot be resolved in the context of a motion to dismiss.

ESI also argues that Plaintiff cannot refer to or incorporate federal or state statutes regarding what constitute reasonable fees for producing medical records. According to the Amended Complaint, however, Plaintiff is not seeking to state a cause of action under either federal or state laws or regulations. The Amended Complaint explicitly states that the state and federal laws and regulations cited therein are merely identified as "evidence of what is reasonable under the circumstances, and not as a separate claim based purely on violations of these statutes." (Am. Compl. ¶ 22.) Thus, while these allegations may not be required to state a claim, they are informative as to the issue of whether ESI's fee was "reasonable" under the circumstances.

The Amended Complaint alleges that Defendant required him to pay a non-negotiable, non-refundable $90.00 fee for "processing" his request to have medical records sent to his lawyer, that this contract term was unreasonable and unconscionable and that he had no

12

meaningful alternative to obtain his records. For all the reasons explained above, he has stated a claim for breach of contract. Therefore, with respect to Count II, the motion to dismiss will be denied.

Unjust Enrichment Claim

ESI argues that the unjust enrichment claim in Count I of the Amended Complaint must be dismissed because an unjust enrichment claim cannot be asserted when a contract exists between the parties.

Rule 8(d)(2) of the Federal Rules of Civil Procedure permits pleading in the alternative. However, "[i]t is well-settled in Pennsylvania that the existence of a contract prevents a party from bringing a claim for unjust enrichment." *Vantage Learning (USA) LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) (footnote omitted). *See also Khawaja v. RE/MAX Central*, 151 A.3d 626, 633-34 (Pa. Super. 2016); *Wayne Moving & Storage of NJ, Inc. v. School Dist. of Phila.*, 625 F.3d 148, 153 n.1 (3d Cir. 2010); *Wingert v. W.T. Phillips Gas & Oil Co.*, 157 A.2d 92, 93-34 (Pa. 1959). This rule applies "regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (quoting *Third Nat'l & Trust Co. of Scranton v. Lehigh Valley Coal Co.*, 44 A.2d 571, 574 (Pa. 1945)).

There are several exceptions that apply in this context, including when the existence of a contract is uncertain or its validity is disputed. *See, e.g., Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F.Supp.2d 513, 527 (E.D. Pa. 2012); *Sheinman Provisions, Inc. v. National Deli, LLC*, 2008 WL 2758029, at *4 (E.D. Pa. July 15, 2008).

In its briefing, ESI repeatedly refers to the "alleged contract." It is therefore unclear if ESI takes the position that a contract exists, and therefore governs the relationship of the parties,

13

or alternatively, contends either that a contract does not exist or otherwise disputes its validity. For this reason, the Court will deny ESI's motion to dismiss Count I.[10]

An appropriate order follows.

---

[10] The Court finds that for purposes of a motion to dismiss, Plaintiff's unjust enrichment claim adequately states a claim. Plaintiff alleges that ESI received a benefit, *i.e.,* payment of $90.00, by overcharging Plaintiff and the members of the putative class for prescription records and it would be inequitable for ESI to retain this benefit for an unreasonable "processing fee."

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH OLSAVSKY, individually and on behalf )
of all others similarly situated, )
      Plaintiff, )
)
vs )   Civil Action No. 18-1278
)   Magistrate Judge Dodge
EXPRESS SCRIPTS, INC., )
      Defendant. )

## ORDER

AND NOW, this 17th day of July, 2019, it is hereby ORDERED that the Motion to Dismiss filed by Defendant Express Scripts, Inc. (ECF No. 24) is denied.

Defendant shall file an answer to the First Amended Complaint by July 31, 2019.

BY THE COURT:

Patricia L. Dodge
United States Magistrate Judge

15